UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.S.D.

      Plaintiff,

v.                                                                      Case No. 05-71844

GENESEE COUNTY COMMUNITY                      Honorable Patrick J. Duggan
MENTAL HEALTH,

      Defendant.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 11, 2006.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

## I.    Introduction

Plaintiff L.S.D.[1] ("Plaintiff") filed this *pro se* action against Defendant Genesee County Community Mental Health ("Defendant"), where she worked as a temporary employee from October 7 to November 22, 2003. In her amended complaint, Plaintiff alleges breach of contract, promissory estoppel, violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12300 , wrongful termination, defamation, intentional infliction of emotional distress, and privacy violations under the Health

---

[1] At Plaintiff's request, she is identified in this case solely by her initials.

Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d-1320d-8.[2]  The matter is currently before the Court on Defendant's Motion for Summary Judgment, which has been fully briefed.  On June 22, 2006, this Court issued a notice informing the parties that it is dispensing with oral argument pursuant to Rule 7.1(e)(2) of the Local Rules for the Eastern District of Michigan. For the reasons set forth below, the Court grants summary judgment in favor of Defendant on all of Plaintiff's claims.

## II. Background

On October 3, 2003, Plaintiff was hired by Option One, a temporary employment agency and a division of Mentor 4, Inc., to work as a data entry clerk for Defendant. On that date, Plaintiff executed various documents in relation to her employment, including an Employment Agreement, an Employment Biographic Information form, and an Acknowledgment of Employment Relationship. *See* Def.'s Mot., Ex. A, B, & C.  Under Paragraph Eight of the Employment Agreement, Plaintiff recognized and agreed that she

---

[2] On May 15, 2006, Plaintiff filed a motion to amend her complaint in order to allege a claim of religious discrimination.  Plaintiff's motion, however, does not set forth the basis for her proposed claim or the facts which would support such a claim.  Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is freely granted where justice so requires. *See* FED. R. CIV. P. 15(a). However, a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *See Foman v. Davis*, 371 U.S. 178 (1962).  In this case, pursuant to an order extending the dates set forth in the initial Scheduling Order, discovery closed on April 30, 2006 and trial was set for this Court's July/August 2006 trailing docket. *See* 2/22/06 Scheduling Order.  Allowing Plaintiff to amend her complaint to add an entirely new claim at this late date would prejudice Defendant (e.g. by requiring new discovery and the filing of another motion for summary judgment). Moreover, the Court believes that such an amendment would be futile, as there is no evidence in the record that Defendant's decision to terminate Plaintiff was in any way related to her religious beliefs.

was an "employee of Mentor 4 and not an employee of [Defendant]." *See* Def.'s Mot., Ex. A ¶ 8. The Employment Agreement further states that Plaintiff's employment is " 'at will' with no certain term of employment being offered or promised and that her employment may be terminated with or without cause at any time." *See id.* ¶ 1. The "Employee Acknowledgment Form" also states that Plaintiff "entered into [her] employment relationship with Option One voluntarily and acknowledge[d] that there is no specified length of employment" and that "either Option One or [Plaintiff] can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of application [sic] federal or state law." *See* Def.'s Mot., Ex. C. Plaintiff subsequently began working for Defendant on or about October 7, 2002.

On November 22, 2002, Dr. Walter Drwal, a psychologist employed by Defendant, found a letter written by Plaintiff addressed to him in his interoffice mailbox. *See* Def.'s Mot., Ex. D & Ex. H ¶ 6. In the letter, Plaintiff begins by stating that one of her doctors recommended that she seek counseling. *See id.* Ex. D. Plaintiff goes on to say that she stopped taking anti-psychotics and antidepressants that had been previously prescribed for her. *See id.* Plaintiff then discusses her history of hallucinations, her fear of seeking counseling for her problems, and finally, her problems with Christianity and sleeping at night:

> And I yell at the Gods I don't believe in about the hypocrisy of it all, the salvation of sin, and how Christians murder their God everytime they say they accept what happened to him as saving them. I'd rather take the consequences for my own actions than swim in someone's blood.
>
> So, I cry myself to sleep. A lot [sic]. I break down in the middle of the day sometimes, and hate gospel music. I hate all things Christian, and I'm going

3

>to get 666 tattooed in my head, because I don't believe in the whole thing. I'm anti the salvation of whores, and adulterers, and I'm so sick of this world telling me that it's okay for that preacher to molest that little girl or the priest that little boy, they're forgiven.

*See id*.

After reading Plaintiff's letter, and based upon his experience assessing individuals with mental health issues, Dr. Drwal concluded that Plaintiff posed a threat to herself and others. *See* Def.'s Mot., Ex. H ¶¶ 7 & 14. He conveyed this information to Defendant's Human Resources Department. Based on this information, specifically that Plaintiff posed a threat to others, Defendant terminated Plaintiff's assignment on November 22, 2002.[3]

Following her termination, Plaintiff filed charges alleging disability discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right to Sue Notice to Plaintiff on March 24, 2004. *See* Pl.'s Resp. at 48-49. On February 5, 2005, Plaintiff filed her complaint against Defendant in state court. On May 26, 2005, Plaintiff's complaint was removed to this Court.

---

[3] In her complaint, Plaintiff alleges that at some point during her employment, Defendant offered to continue her employment for an additional three months. She fails to identify when this offer was made in her complaint; but in response to Defendants Motion for Summary Judgment, she claims she received the offer on November 29. Plaintiff, however, later admits that she was terminated on November 22, 2002. *See* Pl.'s Resp. at 18. Moreover, Plaintiff's own exhibits indicate that she stopped working for Defendant on November 22, 2002. *See id*. Ex. A.

### III. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## IV.   Discussion

### A.   Breach of Contract

Plaintiff claims that Renee Keswick, Defendant's Manager of Training and Community Relations, offered Plaintiff a three month extension of her existing employment with Defendant.  *See* Pl.'s Comp. ¶¶ 3-7.  Plaintiff also claims that an employee of Option One conveyed Defendant's offer to her and that she accepted the offer.  *See id*.  Plaintiff therefore claims that she had a binding agreement to continue working for Defendant and that Defendant breached that contract when it terminated her employment.  *See id*. at ¶¶ 9-11.

According to Plaintiff's Employment Agreement and Employee Acknowledgment Form, she was an at-will employee, subject to termination with or without cause, at any time.  *See* Def.'s Mot. Ex. A and Ex. C.  Plaintiff does not deny that her employment with Defendant was anything other than at-will.[4]  At her deposition, conducted on January 27, 2006, Plaintiff testified that her employment with Option One was at-will and that she had no agreement, either written or verbal, with Defendant or Option One stating that she had a just cause relationship with Defendant.  *See* Def.'s Mot., Ex. G. at 21 & 71-72.

---

[4]Even if Defendant offered to extend Plaintiff's employment for an additional three months, as she claims, she admits that she did not have any oral or written agreement with Defendant or Option One for just cause employment.  *See* Def.'s Mot. Ex. G at 71.  While a contract for a definite duration may presumptively be terminated only for just cause, *see Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 116 n.13, 507 N.W.2d 591 (1993), this presumption is overcome in this case by the express terms of Plaintiff's Employment Agreement and Employment Acknowledgment Form, as well as Plaintiff's own admissions.

Additionally, Plaintiff states in her response that "[she] at no time claimed a just-cause relationship with Defendant." *See* Pl.'s Resp. at 17.

Because there is no genuine issue of material fact that Plaintiff was an at-will employee, her breach of contract claim fails.

### B. Promissory Estoppel

In Michigan, the elements of a promissory estoppel claim are: (1) a promise; (2) that the promisor reasonably should have expected to induce action of a definite and substantial manner on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances requiring that the promise be enforced in order to avoid injustice. *Parkhurst Homes, Inc. v. McLaughlin*, 187 Mich. App. 357, 360-361, 466 N.W.2d 404 (1991)(citing *Nygard v. Nygard*, 156 Mich. App. 94, 100, 401 N.W.2d 232 (1986)). In order to support a claim of promissory estoppel, a promise must be "clear and definite." *State Bank of Standish v. Curry*, 442 Mich. 76, 84-85, 500 N.W.2d 104 (1993).

Plaintiff's promissory estoppel claim is premised on Defendant's alleged promise to extend her employment for three additional months. *See* Pl.'s Comp. ¶¶ 3-7. Even assuming that Defendant did make this promise, Plaintiff's promissory estoppel claim must fail because Plaintiff acknowledges that she was not promised anything other than at-will employment.

### C. ADA

Congress enacted the ADA in an effort to "eliminate discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Act prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

A Plaintiff alleging discrimination in violation of the ADA must present evidence to establish each of the following elements: "(1) [s]he is an individual with a disability; (2) [s]he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) [s]he was discharged solely by reason of h[er] handicap." *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)(citing *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193, 122 S. Ct. 681, 689 (2002). Plaintiff must be deemed "disabled" for the purposes of the ADA if she satisfies one of these three definitions.

An individual is substantially limited in performing a major life activity if the individual has "an impairment that prevents or severely restricts the individual from doing activities of central importance to most people's daily lives." *Williams,* 534 U.S. at 198, 122 S. Ct. at 691. The EEOC has defined the term "substantially limits" for purposes of defining "disability" under the ADA as follows:

>   (i)  Unable to perform a major life activity that the average person in the general population can perform; or
>
>   (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

"A record of an impairment means an individual has a 'history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002)(quoting 28 C.F.R. § 35.104(3)). An individual may fall under the "regarded as" prong in one of two of ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual but non-limiting impairment substantially limits a major life activity." *Ross v. Campbell Soup Co.*, 237 F. 3d 701, 706 (6th Cir. 2001)(citing *United States v. Sutton*, 527 U.S. 471, 479, 119 S. Ct. 2139 (1999)).

At a status conference held on the record in this case on June 14, 2005, Plaintiff identified her disability as depression.  *See* Def.'s Mot., Ex. E at 10.  Depression qualifies as an impairment under the ADA.  *See* 29 C.F.R. § 1630.2(h)(2); *see also Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001)(assuming that major depression is a mental impairment). "Merely having an impairment," however, "does not make one disabled for the purposes of the ADA." *Williams*, 543 U.S. at 195, 122 S. Ct. at 690.  To survive summary judgment, Plaintiff must present evidence from which "a reasonable jury could conclude that [her] depression substantially limited a major life activity." *Swanson,* 268 F.3d at 315 (6th Cir. 2001).

To demonstrate that she is a disabled individual, Plaintiff proffers two medical reports and her own assertion that her depression substantially limits one or more of her major life activities.  As to her own assertion, Plaintiff fails to identify any specific activity limited by her depression.  The first medical report Plaintiff offers is a psychological evaluation Plaintiff claims was written by a Dr. Clark at the Hurley Medical Center ("Hurley").[5]  *See* Def.'s Resp. Ex. H.  In his report, Dr. Clark states that "[r]ecords from Genesee County Community Mental Health and Hurley Medical Center indicate that [Plaintiff] experienced a psychotic illness in 1999, necessitating two inpatient admissions, in February and June, with outpatient treatment through early 2003," and that upon admission into Hurley, Plaintiff was diagnosed with Psychotic

---

[5]Plaintiff only provides two pages from this medical report which do not reflect who wrote the report or when it was written.  Nevertheless, the Court will accept as true Plaintiff's representations regarding the source of the report.

Disorder, not otherwise specified. *See id*. Dr. Clark also states that Plaintiff's test results are indicative "only of some relatively mild or transient depression." *See* Def.'s Resp., Ex. J. Plaintiff next offers a document entitled "MEDICATION REVIEW NOTE" signed by Defendant's staff member Kay McLaren and dated May 13, 2003, which states that Plaintiff's current diagnosis was "Psychotic disorder, not otherwise specified" and her new diagnosis was "Depressive disorder with psychotic symptoms." *See* Def.'s Resp., Ex. I.

Merely submitting evidence of a medical diagnosis is insufficient to establish a disability under the ADA. *Williams*, 534 at 198, 122 S. Ct. at 691. "Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Id*. at 198, 122 S. Ct. at 691-692 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 572, 119 S. Ct. 2162, 2172 (1999)). Although the reports Plaintiff submits may show that she has a history of mental illness dating back to 1999, and that she still was receiving treatment for mental illness in 2003, neither report demonstrates that her impairment substantially limits one or more major life activities. On the contrary, the MEDICATION REVIEW NOTE states that in May 2003– less than six months after Defendant terminated Plaintiff– Plaintiff was working and taking care of her elderly grandmother. *See* Def.'s Mot., Ex. I.

Furthermore, Plaintiff's own testimony at her January 27, 2006 deposition, does not reflect any substantial limitation on any of her major life activities:

Q: In 2002, November 2002, when your employment was terminated, was your depression preventing you from working?

A: No.

Q: Was it restricting your ability to do your job?

A: No.

Q: Was it restricting your ability to go to school?

A: No.

. . .

Q: In 2002, did your depression prevent you from doing your daily activities, such as cleaning house or doing dishes, laundry, getting dressed?

A: In 2002, it actually affected my relationship with the guy I was seeing. He would – when I came home from work, he was downstairs watching TV, I would go upstairs and lay on the bed and cry.

Q: So it didn't prevent you from going to work or doing your normal activities; is that correct?

A: It only affected my social activities.

Q: Okay. And how did it affect your social activity?

A: I was withdrawn; I cried a lot, I didn't want to do much. I just withdrew myself, basically.

. . .

Q: In 2002, did it prevent you from driving?

A: No.

. . .

Q: Does it restrict your ability to drive, either then or now?

> A: No.
>
> Q: Does it prevent you from other normal bodily functions, such as breathing, seeing, walking or talking? Does it prevent you from doing any of those things today?
>
> A: Today, no.
>
> Q: Then?
>
> A: It depends. Because when I am depressed, I cry, can't see through tears. And sometimes I would cry so much that all I could do was ball up and cry.
>
> . . .
>
> Q: But it didn't prevent you from working?
>
> A: No, it didn't.
>
> Q: And it didn't prevent you from doing normal, everyday things?
>
> A: Right.

*See* Def.'s Mot., Ex. G. at 65-70. Plaintiff also presents no evidence to demonstrate that she has a record of an impairment substantially limiting one or more major life activities or that Defendant regarded her as having such an impairment.

As Plaintiff fails to present a genuine issue of material fact to show that she is an individual with a disability, Defendant is entitled to summary judgment on her ADA claim.

    **D.**     **Wrongful Termination Claim**

Plaintiff alleges that she was wrongfully terminated because she was terminated for an illegal reason.   Plaintiff basis her claim on Defendant's alleged violation of the ADA.

In *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 695, 316 N.W.2d 710, 711 (1982), the Michigan Supreme Court recognized a "public policy" exception to the general rule that at-will employees may be terminated at any time and for any reason.  The exception is "based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable."  *Id*.  The Sixth Circuit has held, however, that a plaintiff's wrongful discharge claim premised on the ADA fails when the plaintiff is unable to prove that he or she is "disabled" under the Act:

> We believe that unless [the plaintiff] can show that he is a member of the class of people who are the intended beneficiaries of [the state and federal disability discrimination] statutes, he cannot show that dismissing employees under circumstances like those involved in [the Plaintiff's] dismissal would jeopardize the public policy embodied in those statutes.

*Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934-40 (6th Cir. 2000)(citation and internal quotation marks omitted); *see also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 312 (6th Cir. 2000).  Because Plaintiff fails to demonstrate that she is a member of the class of people protected by the ADA, her wrongful discharge claim fails.

### E.     Defamation

Plaintiff's defamation claim is premised on statements she claims Defendant made to Option One regarding her termination.

14

Under Michigan law, the statute of limitations for a defamation action is one year. MICH. COMP. LAWS ANN. § 600.5805(9).  Plaintiff originally filed this action in state court on February 9, 2005, alleging that the defamatory statements took place on or around November 29, 2002.  Thus Plaintiff's claim is clearly outside of the one year statutory limit.  Plaintiff asserts that her claim falls outside the statute of limitations because she was not able to file her lawsuit during the EEOC investigation.  In Michigan, however, a proceeding before a federal administrative agency does not toll the statute of limitations as it relates to a pending state law claim.  *Mair v. Consumer Powers Co.*, 419 Mich. 74, 77, 348 N.W.2d 356, 257; see also *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322-23 (7th Cir. 1992)(finding the statute of limitation on employee's state law invasion of privacy claim was not tolled by the filing of an EEOC charge); *Arnold v. United States*, 816 F.2d 1306, 1312-13 (9th Cir. 1987)(holding that state law tort claims are not tolled during pendency of Title VII action); *Dupree v. Hutchins Bros.*, 521 F.2d 236, 238 (5th Cir. 1975)(finding state statute of limitation for Section 1981 action was not tolled during pendency of EEOC claim).  Accordingly, Plaintiff's defamation claim is dismissed as untimely.

      **F.**    **Intentional Infliction of Emotional Distress**

Plaintiff contends that she suffered mental distress and anxiety as a result of Defendant's termination of her temporary assignment.  She claims that Defendant's action constitutes extreme and outrageous conduct because Defendant fired her for having a mental illness and for seeking counseling.  To establish a claim alleging intentional

infliction of emotional distress, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996)(citing *Roberts v. Auto Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985)). Plaintiff fails to present evidence to create a genuine issue of material fact with respect to the first and fourth elements.

### 1. Plaintiff Fails to Show That Defendant's Conduct Was Sufficiently Extreme and Outrageous

The extreme and outrageous conduct element of an intentional infliction of emotional distress claim is satisfied when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts*, 422 Mich. at 602 (quoting Restatement (Second) of Torts, § 46 (1965)). The trial court initially must decide, as a matter or law, whether the defendant's conduct may reasonably be regarded as extreme and outrageous. *Doe v Mills,* 212 Mich. App. 73, 92, 536 N.W.2d 824 (1995). "However, 'where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'" *Id*. (quoting Restatement (Second) of Torts, § 46, comment h (1965))

Plaintiff's intentional infliction of emotional distress claim, resting solely on her discharge, fails as a matter of law. "[B]oth state and federal courts in Michigan have

repeatedly held as a matter of law that the termination of an individual's employment is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." *Scuderi v. Monumental Life Ins.*, 344 F. Supp. 2d 584, 606 (E.D. Mich. 2004) (citing *Fulghum v. Parcel Serv., Inc.*, 424 Mich. 89, 96-98, 378 N.W.2d 472 (1985); *Stopczynski v. Ford Motor Co.*, 200 Mich. App. 190, 503 N.W.2d 912, 915 (1993); *Khalifa v. Henry Ford Hosp.*, 156 Mich. App. 485, 499, 401 N.W.2d 884 (1987); *Kovacs v. Elec. Data Sys. Corp.*, 762 F. Supp. 161, 167 (E.D. Mich.), *aff'd*, 929 F.2d 701 (6th Cir. 1991); *Cole v. Knoll, Inc.*, 984 F. Supp. Supp. 1117, 1135 (W.D. Mich. 1997); *Batchelor v. Sears, Roebuck & Co.*, 574 F. Supp. 1480, 1481-82 (E.D. Mich. 1983)). Plaintiff therefore fails to present a genuine issue of material fact as to whether Defendant's actions were extreme or outrageous.

### 2. Plaintiff Fails to Show That She Suffered Severe Emotional Distress As A Result Of Defendant Terminating Her Assignment.

A plaintiff must demonstrate serious emotional distress in order to recover damages on a claim alleging intentional infliction of emotional distress. Liability arises only "where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Roberts*, 422 Mich. at 608-609 (quoting Restatement (Second) of Torts, § 46, comment j (1965)).

Plaintiff baldly asserts that she suffered from a "great deal of anxiety and depression" as a result of Defendant's conduct. *See* Pl.'s Resp. at 20. Plaintiff offers no medical testimony supporting her claim of severe emotional distress. To the contrary, Dr.

Clark's report concludes that "judging from her report, from her history, and from her current level of functioning . . . the psychological impact on her of the loss of this brief, temporary job is minimal." *See* Pl.'s Resp. at 39.

### G.     HIPAA

Plaintiff contends that Defendant violated HIPAA when it failed to obtain her authorization for the release of her psychological medical information. "HIPAA imposes requirements on the Department of Health and Human Services, health plans, and healthcare providers involved in the exchange of health information [in order] to protect the confidentiality of such information . . . ." *Johnson v. Quander*, 370 F. Supp. 2d 79, 99 (D.D.C. 2005)(citing 42 U.S.C. §§ 1320d-d-8).  HIPAA "provides for both civil and criminal penalties for individuals who improperly handle or disclose individually identifiable health information." *Id*.  But HIPAA "specifically indicates that the Secretary of [Health and Human Services] shall pursue the action against an alleged offender, not a private individual." *Logan v. Dep't of Veteran Affairs*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004); *see* 42 U.S.C. § 1320d-5.  Indeed, the federal courts that have addressed the issue have found that no private right of action exists under HIPAA.  *See e.g. Doe v. Bd. of Trustees of Univ. of Illinois*, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006); *Poli v. Mountain Valleys Health Center*, Inc., No. 05-2015, 2006 WL 83378, at *13-14 (E.D. Cal. Jan. 11, 2006) (unpublished opinion); *Haranzo v. Dep't of Rehabilitative Servs.*, No. 7:04-CV-00326, 2005 WL 3019240, at *4 (W.D. Va. November 10, 2005) (unpublished opinion); *Dominic J. v. Wyo. Valley West High Sch.*, 362 F. Supp. 2d 560, 573 (M.D. Pa. 2005);

*Logan*, 357 F. Supp. 2d at 155; *Univ. of Colo. Hosp. Auth. v. Denver Publ. Co.*, 340 F. Supp. 2d 1142 (D. Colo. 2004); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F. Supp. 2d 1176, 1179-80 (D. Wyo. 2001). Accordingly, this Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's HIPAA claim.

## V. Conclusion

For the foregoing reasons, the Court concludes that Plaintiff fails to establish a genuine issue of material fact to support the claims set forth in her complaint.[6]

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff's motion to amend her complaint is **DENIED**;

**IT IS FURTHER ORDERED**, that Plaintiff's remaining pending motions are **DENIED AS MOOT**.

                                      s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE

Copies to:
L.S.D.
Amy J. DeNise, Esq.

---

[6]Pending before the Court are a number of motions filed by Plaintiff: (1) Motion to Correct Damages and Motion to Amend Damages, filed May 15, 2006; (2) Motion to Strike Evidence or, Alternatively to Compel Discovery, filed May 15, 2006; (3) Motion to Compel Discovery, filed May 9, 2006; and (4) Motion to Disqualify Magistrate Mona K. Majzoub Brief in Support and Request for Sanctions, filed May 9, 2006. Based on the Court's decision to grant Defendant's motion for summary judgment, these motions are denied as moot.